Good morning, Your Honors, and may it please the Court, I'm Craig Gena, I represent the appellant, Gluckstadt Holdings, in this case. Gluckstadt Holdings, in the bankruptcy case, Your Honors, served as a fixer, since that term has kind of gotten some popularity these days, in order to unstalemate a stalemated bankruptcy case. Before the bankruptcy case was filed, an entity called Bounds Realty had obtained a state court judgment against the debtor. It had served and issued and noticed a sheriff's writ of execution sale for a day certain. Ten or fifteen minutes before the execution sale was to be had, the debtor, VCR, filed a Chapter 11 bankruptcy case. Before the bankruptcy case was filed, Bounds Realty had solicited Gluckstadt Holdings to make a bid for all of the assets of the debtor, not just the seven acres that are really the subject matter here, but the whole 39 acres of real estate that Gluckstadt Holdings owned, plus a very valuable eminent domain case that ultimately resulted in a $3.2 million verdict for VCR on down the road. So Gluckstadt Holdings was intimately involved in the case at the time of the sheriff's sale. After the bankruptcy was filed and the stay was invoked stopping the sheriff's sale, Gluckstadt Holdings conferred with the creditor body, Bank Plus, a bank that held a consensual mortgage, first mortgage upon the real estate, filed a live-stay motion. The Mississippi Department of Transportation filed a live-stay motion to proceed with the eminent domain case. Bounds Realty objected to all of that and filed its own motion to dismiss, arguing this is a bad-faith filing because at the time of the filing, the debtor had no income, no employees, no cash, no ability to pay creditors. It was not paying creditors. It was essentially a two-party dispute between Bounds Realty getting a judgment, executing upon the judgment, and the debtor trying to resist the getting of the judgment by Bounds Realty and then the collection of it as the case proceeded. In order to resolve all the issues that were before the court at the time, the fixer, Gluckstadt Holdings, came to the court, came to the debtor's lawyer, and entered into an agreement that resulted in an agreed order that was entered some several months after the bankruptcy case was filed, but while the bankruptcy case is absolutely stalemated. As a result of the settlement order, a number of significant events that could never be unwound happened. First, the debtor got a significant benefit of the bargain because this case was not dismissed. This is a classic Piccadilly case, Little Creek case, where the debtor had filed in bad faith with no employees, all the other characteristics of a bad-faith filing, had no ability to reorganize or to pay debts. So the debtor got to live another day. The biggest benefit of the bargain for the debtor in that overall settlement-wise, its case is not dismissed. Had it been dismissed, Gluckstadt Holdings already had conducted the sheriff's sale. All it had to do if the case had been dismissed was stick a deed under the sheriff's nose and it would have acquired all the assets of the debtor for its bid of $2.5 million. One thing that was left to do was get approval from the bankruptcy court. That's provided for in that agreed order. It is, Your Honor. And that's the whole crux of the argument of Gluckstadt Holdings. Neither the trustee, neither the debtor in possession before the case was converted, nor the Chapter 7 trustee complied with that settlement order. That settlement order we submitted in our briefs is a binding contract between the debtor in possession, all the other parties to it, including Gluckstadt Holdings. Were you a party to the agreement? Yes, sir. You're not a signatory to the agreement. Our lawyer is. Charlie Hughes executed the agreement on behalf of Gluckstadt Holdings. Okay. Well, let me ask you this. All I see in the agreed order was obligated the trustee to apply for authority to make this settlement. And he did that. Respectfully, Your Honor, he did not. What he did was he filed a motion to sell the real property for the bid price of $612,500. What he did not do, though, is add that that was the sale price for that particular piece of property to protect the investment of Gluckstadt Holdings, and that there were deed restrictions on top of that as to some of the other property. That motion was never filed. There was never a motion filed that was in strict compliance with the agreed settlement order. Well, a trustee's obligation, though, is to maximize the value of the asset. And isn't that what he tried to do? It is, Your Honor. But for the settlement, though, Judge Davis, there might not have been a bankruptcy. There might not have been a trustee. That ignores the benefit of the bargain that the debtor got based on Gluckstadt being a fixer and the other creditors going along with it when Gluckstadt Holding came in and fixed the settlement. The debtor got to live for another day. If that motion to dismiss had been granted, and the testimony of the debtor's lawyer in the record is clear, he was fearful that it would be granted, Gluckstadt Holdings then would have gotten the entire kit and caboodle for $2.5 million, far less than what the property would have ultimately obtained anyway. And Gluckstadt Holdings' interest was only limited to seven acres, plus the five or so acres that it was restricted on the deed. That was way below market value for the property, wasn't it? But that was part of the negotiated settlement, Your Honor. If the settlement had not occurred, the fair market value of the property would have been the $2.5 million that Gluckstadt Holdings had already bid and had been struck off at the share sale. That would have been the fair market value of the property, and the other 32 acres in the eminent domain case, which produced a $3.2 million settlement, would have been owned by Gluckstadt Holdings. But the court signed off on both the settlement and then it's the subsequent sale instead at the auction. So the court can determine that it's not equitable and doesn't maximize value for the creditors and undo that, can't it, if it chooses to? It could if that issue had ever been presented, Judge Elrod. That issue was never presented to the bankruptcy court. Well, it signed both orders. It did. So you have to presume the court knew what it's doing. It had signed it to give it in this other settlement agreement, but then it signed it to allow it to be auctioned off. So to the extent they're conflicting, the bankruptcy court knew what it was doing. The problem is that issue was never presented to the bankruptcy court in this context, and the sale should never have occurred as it did if the contract had not been breached. The contract was breached, the agreed order was breached by the trustee in failing to include all the settlement terms. That's the bargain Gluckstadt Holdings asked for. That's the bargain that it received. That's the bargain that the other creditors received. The case would stay in Chapter 11. It would not be dismissed, but Gluckstadt Holdings' investment would be protected so that this seven acres would not be put up for property for sale other than under these restrictions. And that issue was never presented to the court. Gluckstadt Holdings never had the benefit of this bargain because of that. Are you aware of any case law that says a Chapter 7 trustee is bound by a debtor in possession? I know when the Chapter 7 trustee comes in and determines the prior agreement is not equitable or not in the best interest of the estate or the other creditors. Are you aware of any case law from any jurisdiction at all, any bankruptcy court and some other state even? Yes, ma'am. The Advantage Storage International case is cited in our brief. It says that you can't do that if you're the Chapter 7 trustee. You don't have that power. It says that a debtor in possession can bind a Chapter 7 trustee, can subsequently bind a Chapter 7 trustee. Even if the Chapter 7 trustee determines that the deal was not in the best interest of the creditors? Yes, ma'am. And that's what the other cases say, the PRLP case say. The other cases also say that there is a contract to be had, and if it's between the debtor in possession, the trustee stands in the shoes of the debtor in possession and should attempt to enforce that contract. Yeah, but this was a sale, and Rule Section 363 tells us what has to happen in a sale of a property. It does, Your Honor, except that the contract that was entered into by all the creditors who were the active players in the case, the Bank Plus, the Department of Transportation, the debtor, and others, contracted for this to occur according to those terms, and that never happened. That was the contract that was breached. That's the agreement that Glockstadt Holdings asserted it had, because this contract was never honored. That contract was never presented to the court. Now, if it had been presented to the court and other creditors had objected to it, that would have been dealt with at the time. It wasn't presented to the court. I mean, when the trustee moved for the sale by auction, the court knew fully about your agreed order and took that into consideration. I mean, he made your bid the opening bid, so he knew all about the agreed order. He did, but that issue was not before the court, Judge Davis, because the contract was never presented to the court. The contract was for a sale of a small slice of the 39 acres for a specific price with deed restrictions. The debtor got the benefit of that agreement. The trustee stands in the debtor's shoes. That agreement was never presented to the court or to the remaining creditor body. But the court determined that it didn't matter whether the debtor or the trustee or anyone agreed. The court said it would be ignoring 363 as well as the court's jurisprudence if it allowed this deal to go through that way, and that even if the trustee were bound, as you say, even if the trustee were bound, the court would not approve that sale. So the court did make a determination. It did, Your Honor, but it ignored the agreement of the parties because that issue would never have been before the court if the trustee of the debtor in possession had complied with the contract. The contract said you shall sell this property for $612,500 and the deed restrictions. That would have been the sale. Right, but the court said, I don't care what agreement you parties made. I don't think it's a good deal. And that's, the bankruptcy court has that, the bankruptcy court is unique among courts in that it sits in equity in this power. It had that power and it used it. Why isn't that right? Because the issue that the bankruptcy court issued an advisory opinion on was improperly framed. The real issue should have been, should that sale have occurred for the $612,000 plus the deed restrictions? That should have been the bid, that should have been the only thing that was presented to the creditor body. Well, the court said, no, I'm not going to just present that. It's against the code. He did, Your Honor, but the benefit of the bargain that the judge approved was never presented to the court. The advisory opinion he entered into did not protect the investment that Juxtad Holdings had entered into and it did not protect the protections Juxtad Holdings had designed for itself because the motion to sell should have been limited to the $612,500 plus the deed restrictions. So whether this price was $10 or $263,000, the court was obligated to approve that? The court was obligated, the trustee was obligated to put that before the court and then the court was obligated to rule, Your Honor. The trustee was obligated to recommend a $10 sale for this million dollar piece of property? If a trustee stands in the debtor possession's shoes to answer Judge Elrod's question and is bound by an agreement made by the debtor, yes, Your Honor, that's correct. The trustee was bound to honor the contract just like the debtor possession would have been and submit that to the court for that amount of money and that period of time. But the court is not going to approve that? A court will not, just as it did not approve this, is not going to approve that if it knows that it can get more money and maximize the utility for all the creditors? That's the whole problem, Judge Elrod. That should never have been a question. The only question before the court should have been, let's sell it for $612,500 with the deed restrictions. That's the only issue that should have been before the court. This other bid, all these other things should not have been before the court on that slice of the property. That's the benefit, that's the bargain that Gluckstadt Holdings believed that it had. And that it never got the benefit of that bargain. The court's not bound by the benefit of the bargain? It's not, but the trustee is bound to present that issue before the court. Maybe nobody would have objected. We would never have known what the real price would have been because Gluckstadt Holdings tried to limit the value of the property to its bid to let the debtor stay in bankruptcy and not be dismissed. Otherwise, Gluckstadt Holdings, if the case had been dismissed, really would have received the benefit of a huge bargain. Wouldn't the trustee have violated his fiduciary duty if he had recommended this sale for a fraction of what the property was worth? Not according to the First Circuit, Your Honor, in the PLRP case. They say, finally, we reject the debtor's argument that their fiduciary obligation required a reexamination of their position vis-a-vis the settlement agreement following the issues of the December 30, 2015, decision. As fiduciaries, the debtor should have complied with the settlement agreement at least until a time when, after notice and opportunity for hearing, the court declined to approve the agreement. That did not happen here. The trustee has no obligation to maximize the assets of the state? He did, Your Honor, but he had a higher obligation to honor the agreement of the parties that got him there in the first place. How do you distinguish the Mickey Thompson case? I'm sorry, Your Honor? The Mickey Thompson case? Are you familiar with that case? No? No, ma'am. Okay. That a trustee's fiduciary duty to maximize the assets of the estate trumps any contractual obligation that a trustee arguably may occur in the course of making an agreement that is not enforceable unless it is approved by the court? No, ma'am. The other cases we cited that are brief, Your Honor, disagree with that. The TRLP case that I just cited from disagrees with that, that the trustee has an obligation to pursue agreements that he made or his predecessor in interest made. Okay. Thank you. Thank you. All right. Mr. Noble? Good morning. May it please the Court, Doug Noble on behalf of Derek Henderson, Chapter 7 Trustee, who's also co-counsel and seated at the council table with me. I'm going to switch gears a little bit because I think the easy way out here is that there The sale was closed as evidenced by the settlement statement and the deed that were attached to the motion to dismiss. The motion to dismiss was filed after the closing of the briefing because the sale didn't occur until August 31, that closing of the sale. Gluckstadt says it's not trying to avoid the sale. It's asserting a breach of contract claim against the trustee. Not yet. Not yet. What has been asked is that the refusal of the bankruptcy court to sell this property to Gluckstadt Holdings, as you were asking for the stated price, that objection was overruled and the court said we're going to have an auction because the testimony at trial was that the market value of the price was significantly higher than the stated price. Gluckstadt challenges that ruling. Gluckstadt challenges that ruling, but the only remedy is to sell it to them at $612,500 with the deed restriction. He has a claim in the bankruptcy proceeding. But that's not what's before us. In fact, at trial that day, we walked in prepared to try two matters. One was the sale, and the other was an objection by the trustee to the proof of claim filed by Gluckstadt Holdings, which asserts damages of some sort for the breach that really hadn't yet occurred. We don't know what that is. It's premature at this point in time. Why is it premature at this time? The sale has already taken place, and they didn't get their money. And they didn't get it at this property at a low price. So, why is that premature? Because we haven't tried it. It's in abeyance of the bankruptcy court. Right, it's not moot, though. That's not moot. But the challenging of the sale, which is what we're here about, is mooted. But we have to decide first whether or not they breached the contract, whether a contract was breached. And that's what's being tried right now. Whether or not, through the sale, it breached the contract. That's what's before us. I respectfully disagree. What Gluckstadt Holdings asked the court to do was to deny the request by the trustee, which was to approve an auction, to open this up to the highest and best offers. Okay, well, that's over. We're not trying to do that. We're only trying to decide. But that's what this appeal is about. This appeal is about whether or not the trustee acted improperly in not going through with its contract. And that's whether or not it was bound by its contract through the settlement agreement. That's what this appeal is about. That's what all the briefing is about. Whether or not, because of the settlement agreement, the trustee acted improperly. Well, again, I respectfully disagree because, as you were asking, the Mickey Thompson case was approved by this court in Cato Covey Mims, N. Ray Moore case, which said we have a settlement which is effectively a sale, and the court has to consider that under the same terms as a Section 363 sale of real property outside the ordinary course of business. That's a move. A required sound business judgment. The trustees required to maximize the estate. Absolutely. Required to have the highest and best offer. I don't think we're having a disagreement on that. We're trying to deal with whether it's moved or not, his challenge. And respectfully, I don't see how it could possibly be moved. But if you want to argue that some more, you can, or you can use your time otherwise. There's three of us, and so you may choose to tell them that it's moved. Well, I would direct you to the Friday submission by Mr. Geno, the appellant under 28J, that says the sale has been consummated, the court found the purchaser was a good-faith purchaser under 363M, and appellant no longer challenges the actual sale itself. So the sale order, which is the order from which appeal was taken, has been mooted, and that's consistent with the Sneed Shipbuilding case that just came from the court six weeks ago that said 363M says we don't get to hear this. It's mooted. There's been no stay. The stay was denied at the bankruptcy court, at the district court, and this court even entered an order denying a stay. Are you arguing that a breach of contract claim he has merged or is inextricably tied to the sale? Is that why you're saying it's moved? No, sir, Mr. Chief Justice, I'm not saying that. What I'm saying is if that is now what is being argued, which I think has evolved since the sale did close, and it's a little bit unusual in situations like this that the sale closed after the briefing, I guess, but if Gluckstadt Holdings has a claim for breach of contract or whatever else it might be, which hasn't been asserted or tried, then we'll go back to bankruptcy court and we'll try it. But that doesn't have anything to do with appeal of an order that allowed the trustee to sell the property over the objection of Gluckstadt Holdings to sell it to me at this bargain basement price, which the proof shows it was one quarter of the price received at the auction. So the appellant has merged these arguments when they shouldn't be, is our view. We can go back to bankruptcy court. When you came to the podium, you said you were changing gears. You were starting with mootness because that was easier. Given that seven minutes is a lap, mootness evidently isn't easier. So maybe you need to go back to the other end of the argument, having at least tried. Our cases that clearly state that this court's precedent is the NRA more and even better was BNP Petroleum, which was this court's affirmance, albeit an unpublished opinion in 642 Federal Appendix 429 of an NRA black case that the bankruptcy court relied on in its opinion, which is just perfect. In that case, the trustee had an agreement to sell, got a better deal without telling the first bidder where there was an agreement, negotiates a better deal, goes to the bankruptcy court, files a motion to approve the second deal. The first purchaser objects, and the bankruptcy court says that's what he's supposed to do. It's a higher and better offer, and it approved it. So that's what we have here. The trustee was obligated to do what he did. To your point, he couldn't have filed that motion. We had those discussions. I can't file this motion. If I file this motion to approve the sale to Gluckstadt Holdings, I am immediately in breach of my fiduciary duty. That's why, if you go back and look at the record, there were all kinds of proceedings. There was a motion to compel filed by the appellant to make us go and file this motion to approve their sale. And the bankruptcy court said we did what the order required anyway. Gluckstadt Holdings was the lead bidder at $612,500 with a deed restriction on a separate parcel of property and didn't want to bid anymore. They had a sweetheart deal that just simply wasn't going to ever be approved like the bankruptcy court found. So if the fallout from that is that the appeal is moot, which we submit, of course it is, they don't get the property, okay, well, we're back to is there a breach of contract claim? Was the contract valid? Is there some other claim of tortious interference or whatever else it may be? Well, fine. We'll go back to the bankruptcy court. There's a whole lot of money sitting in escrow, and they can sue for whatever they want to sue. Was the motion to compel tried? It was resolved. No, sir, it was not. And basically it was an agreement that we would proceed with a sale motion to approve an auction, and the auction would state, and it did state, that the first offer on the applicable track would be that the lead bidder was Gluckstadt Holdings at the agreed upon amount, $612,500 with a deed restriction on a separate parcel. And the court found that the agreed order didn't prevent that, and we did exactly what the agreed order said. Gluckstadt Holdings didn't want higher and better offers because they had what the record clearly stated was a below market offer. And as you pointed out, that's not how it works in bankruptcy. So you want us to send you back to the court for the court to determine in the first instance, because you believe it hasn't done so, that there's no breach. You don't want us to rule that as the bankruptcy court already determined that the trustee did exactly what it was supposed to do. You don't want us to determine that here today? If the appeal is dismissed as moot, then that determination is made. You'd rather have that than have that there's no breach claim because the trustee did what it was supposed to do? Well, frankly, I don't believe that that would be a proper decision for the court to make. But at the same time, I don't think that there is a valid claim. I don't know what the claim is. It hadn't been stated. There's no complaint. The proof of claim doesn't assert a breach of a contract. It asserts that we did all these marvelous things and we're entitled to an administrative claim, a post-petition claim in an amount of a million dollars. Well, that hadn't been litigated. So, again, that's why it's premature. I would love for you to wipe the slate claim and send us home, and then we can distribute this money and this bankruptcy case would be over. But I don't feel like that's proper. I don't think that there can be a valid breach of contract claim when the law is so clear as to what the trustee is required to do. And the findings and conclusions that the bankruptcy court made were so clear and met with no rebuttal evidence other than this just wasn't fair. But you don't want us to rule that? I'm happy for you to rule that way, of course. Just following the rules and the statute, I just don't think that we're there yet. Well, teed up for us was the propriety of the bankruptcy's overruling of their objection of what transpired. That was sort of teed up as the neon sign issue. The mootness was sort of ancillary, but you prefer ancillary. Well, again, I don't think under the case law that there can be any determination that there was a valid contract simply because the parties went over in a corner and negotiated a deal that was memorialized by an agreed order. And the agreed order is not, in this instance, as the record was replete and Mr. Geno acknowledged, it had to be noticed out. And in the Moore case, you have to treat it just like you do a sale. So the court wasn't going to approve it. So what good is the agreement? It was a bad agreement. And in bankruptcy, for good or for bad, you have to go get approval of those kinds of things. And approval wasn't granted. It wasn't even sought. And it wasn't sought until the trustee came along. And it wasn't going to be granted. So I'm not terribly troubled by a breach of contract over a contract that the court said it was never going to approve. The court was right and the cases are right in saying the parties can't go out and negotiating agreements that bind the parties and bind the court when it hadn't been noticed out or approved. That's just not how it works in bankruptcy court. And so that didn't happen here. So the effect of an agreement, there may be two or three other agreements out there that were negotiated and agreed to that never got court approval on. Do we have a solemn debtor here? We do. Very solemn. The sale was for over $6 million. And in addition to that, Mr. Geno referenced the Department of Transportation money. What happened, this is at the corner of the interstate in a very developed area. And a new interchange is being built there. And the on-ramp took a piece of this property. And the quick take procedure in Mississippi provides that the eminent domain proceeding is filed and they're going to immediately pay you the money and then you'll haggle over whether they should pay you more. $2 million was in the bank and they had the quick take procedure had commenced. So this is all that's left of the bankruptcy proceeding? This is all. Well, there's another appeal that just got docketed here in another matter, opposing the sale price again by the equity owners. This is a fine mess, as bankruptcy cases can be. But really that's it. And Gluckstadt Holdings has its claim that's been held in abeyance for its damages or whatever the claim may be. But it's an unusual case in a Chapter 7 that has $6 million. So naturally people continue to fight over it. My remarks are concluded unless you have any further questions. Okay. Any other questions? All right. Thank you, sir. Thank you. Back to you, Mr. Geno. Please, Your Honor, I would like to correct one thing my colleague said. In the response to the motion to dismiss this appeal as moot, we attached a copy of our proof of claim. That proof of claim says, in the trustee's response to Gluckstadt Holdings' motion to compel, it is clear that the trustee not only intends to not only breach the contract entered into by Gluckstadt Holdings, bounds realty and the debtor, but he intends to intentionally breach it, ignoring a binding final court order. While Gluckstadt Holdings vehemently denies the trustee is entitled to take the course of action he is taking, Gluckstadt Holdings must, because of the existing deadlines, protect its interest and file this claim because of the proof of claim deadline of February 11, 2014. So we have alleged a breach of contract that at the time it looked like the trustee was going to commit and, in fact, did. So that issue is in our proof of claim. An objection has been filed to it. And it's true it has not been set for trial yet and has not been tried, but I don't think anyone would counsel Gluckstadt Holdings not to assert the claims that it has asserted on this appeal and think that it would have a clean slate when the proof of claim trial came up. Maybe that's the case, but that's certainly not a chance that we want it to take. I just want to mention one thing about – Does that mean you want us to rule on the issue and you don't want us to say it's moot, or you do want us to say it's moot because you told us it wasn't moot in your briefing to the court? I'm happy to go litigate the proof of claim, Your Honor, but if we had not taken this appeal, you know what the defense would be. It would be preclusion if we had not pursued the appeal. So moot or not moot? Ma'am? Moot or not moot as we stand here today? Moot. You're for moot today. Oh, I'm not for moot today, but they would argue it would have been moot then because the appeal would have been decided. Whether or not the court, the lower court, would have adopted that, I don't know. But failure to defile the appeal and pursue this claim. Okay. So are you for mootness or not for mootness as you stand here today having heard your opposing counsel's argument? I am not for mootness, and I will say that this court said in this need shipbuilding case relied on by my opposition a different motivation than complexity motivates Section 363M mootness, the need to encourage parties to bid for estate property. The statute assures purchasers that once the bankruptcy court approves the sale and it is consummated, no appellate court can later second-guess the deal. Not the case here. There is no purchaser who's afraid of this appeal. The purchaser has got title to the property, assisted by what Gluckstadt Holdings did to clean the title up when it was still acting as the fixer in this case. But the money did not get paid to a secured creditor. It didn't get paid to the unsecured creditors. There's no money that would have to be discord to pull back into the estate. So mootness is not an issue or a problem here because of those issues. The purpose behind 363M is to protect and encourage purchasers so that if an issue, a sale is overturned on appeal, it is not like equitable mootness in plans because no money got dispersed out here. It's all being held by the bankruptcy estate. So we don't say that mootness is an issue at all. One of the issues or the problems of the breach of contract is that Gluckstadt Holdings did not contract for an auction. That's one of the breaches of the contract that the trustee committed. His motion to sell contemplated an auction, and that's one of the protections Gluckstadt Holdings believed that it had by allowing the debtor to stay in bankruptcy and not have the case dismissed so that there would not be an auction and its bid would be locked in as the only bid for the property. Filing for an auction was also a breach of contract. And as Judge Olak stated in the Hyperion case that's mentioned in our materials, a debtor can certainly enter into an agreed binding contract with a third party that can be enforced by the court, even though it may not have been noticed out yet. That was the purpose behind the managed technology case and signing it in the brief in the PRLP case, too, that debtors, trustees, and the trustee in this case, Judge Elrod, admitted that he was bound in the record by the debtor-in-possessions agreement. Thank you, Your Honor.